

FILED

JAN 0 8 2016

MICHAEL E. KUNZ, Clerk
By____R____Dep. Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BOGAN LAW GROUP, LLC.                    Attorneys for Plaintiff
Mary Elizabeth Bogan, Esquire
PA Identification No. 57072
One Liberty Place                        **16      0081**
1650 Market Street, Suite 3600
Philadelphia, PA 19103
and
"IFight4Justice" Law Office of Predrag Filipovic, Esq.
1735 Market St. Ste 3750
Philadelphia, PA 19103                   Co Counsel for Plaintiff

| | |
|---|---|
| CLAYTON PRINCE TANKSLEY : | |
| : | |
| Plaintiff : | |
| : | Case No. |
| v. : | |
| : | |
| LEE DANIELS, : | |
| : | |
| LEE DANIELS ENTERTAINMENT, : | |
| : | |
| DANNY STRONG, : | |
| : | |
| DANNY STRONG PRODUCTIONS, : | |
| : | |
| TWENTY-FIRST CENTURY FOX, INC., : | |
|    Parent Company of: : | |
| FOX ENTERTAINMENT GROUP, INC., : | |
|    Parent Company of: : | |
| TWENTIETH CENTURY FOX FILM CORP., : | |
|    Parent Company of: : | |
|    Twentieth Century Fox Television, Inc. : | |
|    Twentieth Television, Inc., : | |
|     Twentieth Century Fox International : | |
|    Twentieth Century Fox International : | |
|     Television, LLC : | |
|    Twentieth Century Fox Home Enter- : | |
|     tainment, LLC : | |
| and : | |
| : | |
| FOX NETWORK GROUP, INC., : | **JURY TRIAL DEMANDED** |
|    Parent Company of: : | |
|    Fox Broadcasting Company, : | |

1

Fox Television Stations, Inc.,          :
Fox Digital Media,                      :
Fox International Channels, Inc.,       :
                                        :
DOES 1 through 10,                      :
                                        :
SHARON PINKENSON, Executive Director,   :
      and                               :
GREATER PHILADELPHIA FILM OFFICE,       :
      Defendants.                       :
                                        :

_____

## COMPLAINT

This is a copyright infringement action arising under the Copyright Act of 1976, wherein Plaintiff is seeking damages and injunctive relief.

### JURISDICTION and VENUE

1.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338(a).  Federal question jurisdiction arises under and pursuant to Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*  The Court has personal jurisdiction over the Defendants in that they reside and/or are doing business in this judicial district, the acts of infringement complained of herein occurred in this district, and Defendants have caused injury to Plaintiff and his intellectual property within the Commonwealth of Pennsylvania and within this judicial district.  This Court has pendant jurisdiction over any claims asserted herein which arise under state law in that such claims flow from a common nucleus of operative fact.

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a) insofar as a substantial portion of the events, acts and omissions giving rise to this claim occurred and Defendants and/or their agents reside or may be found in this judicial district.

2

## PARTIES

3.      Plaintiff, Clayton Prince Tanksley a/k/a Clayton Prince (hereinafter "Prince" or "Plaintiff"), is an adult individual who resides in Philadelphia, PA. Plaintiff is a successful actor, writer, producer, and director who, in 2005, created television pilot show entitled "Cream".

4.      Defendant, Lee Daniels (hereinafter "Daniels") is a producer, director and screenwriter and is affiliated with various guilds associated with the television and film industry. Daniels develops and produces television shows and feature films and is credited with either producing, directing and/or writing several feature films. Upon information and belief, Plaintiff alleges that Daniels is a resident of State of New York.

5.      Daniels presents himself to the public and to his business associates, as one of the genuine creators of the infringing television soap opera series "Empire" and has also acted in and directed various episodes of the show. Daniels has financially benefited in various and multiple ways by his exploitation of the infringing television show "Empire", presenting himself as its creator.

6.      Defendant, Lee Daniels Entertainment, Inc. (hereinafter "Daniels Entertainment"), is a New York corporation with a principal place of business at 39 West 131st Street, New York, NY 10037. Upon information and belief, Plaintiff avers that Daniels Entertainment is a management and film production company owned and operated by Daniels.

3

7.     Defendant, Danny Strong (hereinafter "Strong"), is a writer, executive producer, producer and actor with numerous credits of film and television projects, including "Empire". Strong develops and produces television shows and feature films. Upon information and belief, Plaintiff avers that Strong is a resident of Los Angeles County, California.

8.     Strong also presents himself to the public and to his business affiliates as one of the genuine creators of "Empire" and has also acted in and directed various episodes of the show.  Strong has financially gained by his exploitation of "Empire".

9.     Defendant,   Danny   Strong   Productions   (hereinafter   "Strong Productions") is, upon information and belief, a production company owned and/or controlled by Strong.

10.     Defendant, Twenty-First Century Fox, Inc. (hereinafter "21st Century Fox") is a multinational mass media corporation with a principal place of business located at 1211 Ave of the Americas, New York, NY 10036.  21st Century Fox is a Delaware corporation; its registered agent for service of process is listed as The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware, 19801.

11.     Upon information and belief, Plaintiff avers that 21st Century Fox owns and controls and/or is otherwise related to various affiliates and subsidiaries by and through which it develops, produces, markets, sells, syndicates, distributes, and broadcasts, *inter alia*, movies and television shows including, but not limited to, the following entities:

4

a. Fox Entertainment Group, Inc. (hereinafter "Fox Entertainment");

b. Twentieth Century Fox Film Corporation (hereinafter "20th Century Fox Film");

c. Twentieth Century Fox Television, Inc.(hereinafter "20th Century Fox TV");

d. Twentieth Television, Inc.(hereinafter "20$^{th}$Television");

e. Twentieth Century Fox International Television, Inc. (hereinafter "20$^{th}$Century International TV");

f. Twentieth Century Fox Home Entertainment LLC (hereinafter "20th Century Fox Home");

g. Fox Networks Group, Inc. (hereinafter "Fox Networks");

h. Fox Broadcasting Company (hereinafter "Fox Broadcasting");

i. Fox Television Stations, Inc. (hereinafter "Fox TV Stations");

j. Fox Digital Media (hereinafter "Fox Digital"); and

k. Fox International Channels, Inc. (hereinafter "Fox Channels").

12.     Plaintiff is informed and believes and, on that basis, avers that 21st Century Fox is the Parent Company of Fox Entertainment.

13.     Upon information and belief, Plaintiff avers that Fox Entertainment is a Delaware corporation with a principal place of business located at 10201 W. Pico Boulevard, Building 100, Suite3220, Los Angeles, CA 90035. Its registered agent for

service of process is listed as C.T. Corporation System, 818 W. Seventh Street, Los Angeles, CA 90017. Fox Entertainment is the Parent Company of 20th Century Fox Film and Fox Networks.

14.     Upon information and belief, Plaintiff avers that 20th Century Fox Film is a Delaware corporation with a principal place of business located at 10201 W. Pico Boulevard, Los Angeles, CA 90035. Its registered agent for service of process is listed as C.T. Corporation System, 818 W. Seventh Street, Los Angeles, CA 90017. 20th Century Fox Film is the Parent Company of 20th Century Fox TV, 20th Television, 20th Century International TV, and 20th Century Fox Home.

15.     Upon information and belief, Plaintiff avers that Fox Networks is a Delaware corporation with a principal place of business located at 10201 W. Pico Boulevard, Building 103, Los Angeles, CA 90064.  Its registered agent for service of process is believed to be C.T. Corporation System, 818 W. Seventh Street, Los Angeles, CA 90017.Fox Networks is the Parent Company of Fox Broadcasting, Fox TV Stations, Fox Digital, and Fox Channels.

16.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as Does 1 through 10, are unknown to Plaintiff who, therefore, sues such Defendants by fictitious names (hereinafter the "Doe Defendants"). Plaintiff will seek leave of Court to amend this Complaint to state the true names and capacities of the Doe Defendants when that information has been ascertained. Plaintiff is informed and believes and, on that basis, avers that the Doe Defendants are

liable to Plaintiff as a result of their participation in all or some of the acts complained of herein.

17.     Daniels, Daniels Entertainment, Strong, Strong Productions, 21st Century Fox, all of entities named in paragraphs 11 through 15 above and the Doe Defendants are hereinafter referred to collectively as the "Fox Defendants".

18.     The Fox Defendants produce, market, sell, syndicate, distribute, and/or broadcast, domestically and/or internationally, the infringing television series "Empire". The Fox Defendants have benefited financially from their exploitation of "Empire".

19.     Upon information and belief, Plaintiff avers that, at all times relevant hereto, each of the Fox Defendants was the agent, servant, employee, partner, successor, assignees, joint venture and/or franchisee of each of the other Fox Defendants named herein, and was at all times acting within the course and scope of said agency, service, employment, partnership, joint venture and/or franchise. Furthermore, Plaintiff is informed and believes and, on that basis, avers that each act and omission hereinafter alleged on the part of any one Fox Defendant, was done with the approval and consent and was ratified by each of the other Fox Defendants.

20.     Defendant, Sharon Pinkenson (hereinafter "Pinkenson"), is and, at all times relevant hereto, has been the Executive Director of the Greater Philadelphia Film Office, with business address at One Parkway Building, 1515 Arch Street, 11th Floor, Philadelphia, PA 19102.

7

21.     Defendant, The Greater Philadelphia Film Office (hereinafter "GPFO"), is the film commission for Southeastern Pennsylvania with a principal place of business located at One Parkway Building, 1515 Arch Street, 11th Floor, Philadelphia, PA 19102. Upon information and belief, GPFO's purpose, *inter alia*, is to attract film production to the region in order to generate jobs and stimulate economic development.

22.     The Fox Defendants, Pinkenson, and GPFO are hereinafter referred to collectively as "Defendants".

23.     Upon information and belief, Plaintiff alleges that, at all times relevant hereto, each Defendant may be held liable for the infringing acts committed by another Defendant to the extent that each Defendant had the right and ability to control the infringing activities alleged herein and had a direct financial interest in such activities, regardless of whether each such Defendant had intent or knowledge of the infringement alleged herein. In addition, Plaintiff is informed and believes and, on that basis, avers that, at all times relevant hereto, each Defendant who knowingly induced, caused or materially contributed to the infringement alleged herein by another Defendant, but who may not have committed or participated in the infringing acts him or herself or itself, may be held liable as a contributory infringer as each such Defendant had knowledge, or reason to know, of the infringement.

24.     Plaintiff believes and, therefore, avers that the Fox Defendants have all gained financially and have enjoyed other benefits flowing from their exploitation of the infringing television show "Empire".

8

## GENERAL AVERMENTS

25.     Prince filed an application for copyright registration of "Cream" with the United States Copyright Office and a Registration (No. PAu3-022-354) was issued effective as of September 23, 2005.  A true and correct copy of said Registration is attached hereto as Exhibit "A" and incorporated herein by reference.

26.     Prince's application was approved and, since 2005, Prince has been the sole and exclusive author and creator of an original television pilot show entitled "Cream". Prince owns the rights and title to the copyright in "Cream" as author and creator.

27.     On or about April 5, 2008, Prince participated in an event and competition, the "Philly Pitch", organized, sponsored and supervised by GPFO where writers and potential producers have an opportunity to pitch their film concepts to a panel of entertainment industry professionals who act as 'judges'.  Daniels was one of the judges at this event.

28.     During the competition, Prince pitched an original script "Kung Fu Sissy", and following the event, which was well received and as a result, Prince spoke privately with several of the judges, including Daniels and pitched "Cream" to him.  Prince gave Daniels several copies of a DVD consisting of three (3), approximately 30-minute episodes of "Cream", along with a written script of the show.  See: (1) Letter dated February 25, 2015 from Joan Bressler, Director of the Greater Philadelphia Film Office; (2) Notarized statement of Adrienne Covington dated April 22, 2015; (3) Email from Kelly Wolfington, dated April 6, 2008; and (4) Email from Dawn Wolf, dated April 15, 2008, true and correct

copies of which are attached hereto collectively as Exhibit "B" and incorporated herein by reference.

29.     On or about January 7, 2015, the pilot episode of a television series entitled "Empire" debuted on Fox Television.  Information posted on the Internet Movie Database webpage for the television series "Empire", confirms that Daniels and Strong are the creators of "Empire" and have also acted in and directed various episodes of the show.

30.     Plaintiff avers that the television series "Empire" is so substantially similar to "Cream", and that various aesthetic elements, including, without limitation, the physical appearance of the characters, plots, and scenes, as well as story lines are virtually identical to those shown on the DVD of "Cream", to which the Fox Defendants had access *via* Daniels, who had received it, along with the screenplay, directly from Prince at the Philly Pitch event in April 2008.

31.     The show titles, stories, character traits, scenes, and incidents portrayed in the two shows (*i.e.,* "Cream" and "Empire") are in many respects strikingly substantially similar, as is set forth in greater detail below.  These substantially identical elements, combined with the Fox Defendants' direct access to the DVD and script of "Cream" (hereinafter the "Cream Materials"), leave little, if any, doubt that all the essential aspects of "Empire" were copied directly from "Cream", as well as many of the non-essential elements.

32.     Prince, through his management company, had arranged with a sales representative to market "Cream" for production and broadcast.

33.     However, once "Empire" began airing, none of the television networks was interested in "Cream" due to its striking similarities to "Empire", which demonstrates that several objective observers immediately recognized the obvious and substantial similarities between the two shows.

### FIRST CLAIM FOR RELIEF
### DIRECT COPYRIGHT INFRINGEMENT
#### Plaintiff vs. Fox Defendants

34.     Plaintiff re-alleges each and every averment set forth in the preceding paragraphs, all of which are incorporated herein by reference.

35.     Prince is now and, at all times relevant hereto, has been the sole proprietor of all right, title and interest in and to the copyright in "Cream".

36.     Plaintiff alleges that the Fox Defendants' unauthorized copying of the original elements of "Cream" infringes Prince's copyright.

37.     Plaintiff is informed and believes and, on that basis, avers that the Fox Defendants have in the past, are continuing at present, and intend in the future, to produce, broadcast unauthorized works that are substantially similar to and/or derivative of "Cream", including both old and new episodes of the infringing television series, "Empire".

38.     Since the Fox Defendants had direct access to the Cream Materials, the Fox Defendants were knowingly and willfully involved in the unauthorized copying of "Cream", and the original elements thereof, in order to create a work that is substantially similar to and derivative of Prince's copyrighted creation.

11

39.     Plaintiff avers that the following is non-exclusive summary of the substantial similarities, including expressions of ideas and concepts, as between "Cream" and "Empire":

### (A) THEME

Both "Cream" and "Empire" are soap opera type dramas. Both shows have evocative, one-word titles. The central theme in both shows are virtually identical insofar as they both focus on an African-American male who has overcome a disadvantaged/criminal past to achieve financial success in music industry only to be exploited by those closest to him.

### (B) PLOT

The central plot in both "Cream" and "Empire" is the same.  In both shows, the male protagonist is forced to contend with family members who are claiming entitlement and scheming to take over 50% of his record label business, and exploiting his children in the effort.

### (C) SETTING

It is particularly significant that both "Cream" and "Empire" are set, counterintuitively, in Philadelphia, which is certainly not known as a hot spot in the recording industry.  Each of the male protagonists are from Philadelphia and have risen beyond their criminal pasts to establish record label businesses in that city.

### (D) CHARACTERS

The primary male protagonist in both "Cream" and "Empire" is an African-American male in his mid-30s who rises from poverty and a life of crime on the streets of Philadelphia to become the head of a large record label company. Other similar characters include female leads with drug backgrounds who had children with the male protagonist in the past and are now seeking to claim a part of his business. Each of the male leading characters also has a son who is suffering from a mental disorder, both of whom exhibit the 'quirk' or symptom of referring to themselves in the third person.

### (E) MOOD

Both shows present regular musical interludes, in which the characters perform in order to set the mood and atmosphere and which also serve as a means of expressing the emotional states of those characters.

### (F) PLOT/SCENE/CHARACTER SIMILARITIES

The following is a non-exhaustive comparison of various scenes taken from the DVD of "Cream" and from aired episodes of "Empire" showing specific plot, scene, dialogue, and/or character similarities between the two shows:

13

| "CREAM" | "EMPIRE" |
|---|---|
|  |  |
| 1. The male lead, Winston, is an African-American male who appears to be in his mid-30s. He was born and raised in Philadelphia. He has a criminal background, but has risen beyond his disadvantaged youth to become the head of a successful record label company based in his hometown of Philadelphia.<br><br>Winston dresses in button-down shirts without a tie and occasionally wears a blazer. His hair is straightened. | 1. The male lead, Lucious, is an African-American male who appears to be in his mid-30s. He was born and raised in Philadelphia. He has a criminal background, but has risen beyond his disadvantaged youth to become the head of a successful record label company based in his hometown of Philadelphia.<br><br>Lucious dresses in button-down shirts without a tie and occasionally wears a blazer. His hair is straightened. |
|  |  |
| 2. Winston is told that he has an incurable disease by a white, middle-aged, female physician. | 2. Lucious is told that he has an incurable disease by a white, middle-aged, female physician. |

14







3.  Winston is forced to contend with family members seeking to take over 50% of his record label business.

3.  Lucious is forced to contend with family members seeking to take over 50% of his record label business.





4.  The lead female character, Brenda, has had problems with drugs in the past.  She had children with Winston, but did not raise them.

4.  The lead female character, Cookie, has had problems with drugs in the past.  She had children with Winston, but did not raise them.

15





| | |
|---|---|
| 5.    Winston has a son, Angelo, who is mentallyill.  Angelo refers to himself in the third person. Angelo is in-line to take over his father's record label business. | 5.  Lucious has a son, Andre, who is bi-polar. Andre refers to himself in the third person. Angelo is in-line to take over his father's record label business. |





| | |
|---|---|
| 6.    Winston is ruthless and willing to kill to protect his interests.  The victim is shot shortly after urinating outside. | 6.  Lucious is ruthless and is willing to kill to protect his interests.  The victim is shot shortly after urinating outside. |







7.  One of the story lines involves a same-sex relationship between two women.

7.  One of the story lines involves a same-sex relationship between two men.





8.   Brenda is involved in a female-female altercation with Winston's mother, Nora.

8.   Cookie is involved in a female-female altercation with Lucious' girlfriend.

17





9. "Cream" uses flashbacks, filmed in black and white, as well as Hip-Hop and R & B music to propel the story forward and create mood.

9. "Empire" uses flashbacks, filmed in black and white, as well as Hip-Hop and R & B music to propel the story forward and create mood.





10. Winston has secretly fathered children with Brenda and has lied about his paternity for years,

10. Lucious has secretly fathered children with his son's girlfriend and has lied about his paternity for years, deceiving the children into

| | |
|---|---|
| deceiving the children into believing that someone else is the biological father. | believing that someone else is the biological father. |
|  |  |
| 11.  One of the storylines in "Cream" involves a dangerous rivalry between Winston's company and a rival record label involving the 'poaching' of a recording artist. | 11.  One of the storylines in "Empire" involves a dangerous rivalry between Lucious' company and a rival record label involving the 'poaching' of a recording artist. |
|  |  |
| 12.   In the finale of "Cream", Winston is arrested. | 12.  In the final episode of "Empire", Season 1, Lucious is arrested. |

40.     The natural probable, and foreseeable result of the Fox Defendants'
wrongful conduct has in the past and will continue to deprive Plaintiff of the benefits of
selling "Cream" and any other work derivative of "Cream", and to deprive Plaintiff of the
goodwill that would necessarily be associated therewith.

41.     Upon information and belief, Plaintiff alleges that he has in the past and
continues to lose substantial revenues and has sustained other damages as a result of the
Fox Defendants' wrongful conduct and the ongoing production and sale of their infringing
series, "Empire". The Fox Defendants' wrongful conduct has also deprived and will
continue to deprive Plaintiff of opportunities for expanding goodwill.

42.     Upon information and belief, Plaintiff avers that unless enjoined by this
Court, the Fox Defendants intend to continue their course of conduct and to wrongfully
use, infringe upon, sell and otherwise profit from Prince's copyrighted creation, "Cream",
and from works derived therefrom.

43.     As a direct and proximate result of the acts of the Fox Defendants as alleged
above, Plaintiff has already suffered irreparable damage and has sustained lost profits.

44.     Prince was a contract regular in the soap opera "Another World" and the
television series "Dark Justice", and received fair and reasonable compensation for his
performances. Accordingly, had the production of "Cream" not been prevented by the Fox
Defendants' wrongful conduct, it is a virtual certainty that Prince would have been cast in
the lead role.

20

45.     As a direct and proximate result of the acts of the Fox Defendants as alleged above, Prince has suffered irreparable damage to his acting career and has sustained lost earnings.

46.     Plaintiff has no adequate remedy at law to redress all of the injuries that the Fox Defendants have caused and intend to cause by their conduct.  Plaintiff will continue to suffer irreparable harm and sustain lost profits, lost earnings, and other damages until the Fox Defendants' actions as alleged above are enjoined by this Court.

47.     By their actions as alleged above, the Fox Defendants have infringed and will continue to infringe Prince's copyright in and relating to "Cream" by producing, distributing and placing upon the market products which are derivative of Prince's copyrighted work.

48.     Plaintiff is further entitled to recover from the Fox Defendants the damages, including attorney's fees, that he has sustained and will sustain, and any gains, profits and advantages obtained by the Fox Defendants as a result of their acts of infringement as alleged hereinabove.

WHEREFORE, Plaintiff, Clayton Prince Tanksley, demands judgment against the Fox Defendants, jointly and severally, and requests relief as set forth in detail below.

**SECOND CLAIM FOR RELIEF**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**Plaintiff vs. Defendants, Sharon Pinkenson and Greater Philadelphia Film Office**

49.     Plaintiff re-alleges each and every averment set forth in the preceding paragraphs, all of which are incorporated herein by reference.

50.     Upon information and belief, at all times relevant hereto, Pinkenson was the Executive Director of GPFO and responsible for overall supervision and oversight of all GPFO activities including the 2008 Philly Pitch event.

51.     Plaintiff believes and, therefore, avers that Pinkenson and GPFO failed to institute proper safeguards and otherwise take appropriate measures properly or adequately ensure that the original creations pitched by participants during GPFO's Philly Pitch Event in April 2008 would be protected from unauthorized copying or other misuse.  In particular, but without limitation by specification, Pinkenson and GPFO failed to disclaim liability or otherwise warn participants of the dangers of authorized copying, and failed to obtain appropriate guarantees and undertakings from the judges in order to protect the original work presented from misappropriation.

52.     Furthermore, Plaintiff believes and, therefore, avers that Pinkenson and GPFO have contributorily infringed upon Prince's copyright by materially facilitating the direct infringement committed by the Fox Defendants insofar as they provided the venue that led Prince to Daniels and created an environment where Prince was induced and encouraged to share the Cream Materials with Daniels, and Daniels was thereby afforded an opportunity to obtain the Cream Materials.

53.     Pinkenson and GPFO knew that Prince had pitched "Cream" to Daniels, including, but not limited to, that Prince had spoken with Daniels privately after the event, and that Prince had given Daniels the Cream Materials, but Pinkenson and GPFO failed to take or implement appropriate measures in order to safeguard Prince's interests and prevent misuse of the original works presented at all material times during the Philly Pitch event.

54.     Through their acts and/or omissions as alleged herein, Pinkenson and GFPO knowingly induced, caused, and materially contributed to the direct infringement of Prince's copyrighted creation, "Cream".

55.     As a direct and proximate result of Pinkenson's and GPFO's contributory infringement as aforesaid, Plaintiff has suffered irreparable damage and has sustained lost profits.

56.     Plaintiff has no adequate remedy at law to redress all of the injuries suffered as a result of Pinkenson's and GPFO's contributory infringement.

WHEREFORE, Plaintiff, Clayton Prince Tanksley, demands judgment against Sharon Pinkenson and the Greater Philadelphia Film Office, jointly and severally, and requests relief as set forth in detail below.

**THIRD CLAIM FOR RELIEF**
**NEGLIGENCE**
**Plaintiff vs. Defendants, Sharon Pinkenson and Greater Philadelphia Film Office**

57.     Plaintiff re-alleges each and every averment set forth in the preceding paragraphs, all of which are incorporated herein by reference.

58.     Pinkenson and GPFO had a duty to Prince to take appropriate measures in order to safeguard his legitimate interests in the original works presented at the 2008 Philly Pitch event, and to protect those works from misappropriation or misuse.

59.     That duty is not extinguished or otherwise diminished by virtue of Prince having copyrighted "Cream" prior to presenting it to Pinkenson, GPFO, and/or to the judges at the GPFO Philly Pitch event, whose duty is to take reasonable measures to protect

23

the original materials presented by Prince, and such duty, runs independent and apart from the protection provided by the applicable copyright laws.

60.    Pinkenson and GPFO breached their duty to Prince in that they negligently failed to take or implement appropriate measures in order to safeguard his interests and prevent misappropriation or misuse of the original works presented by Prince at all material times during the Philly Pitch event.

61.    In particular, Pinkenson and GPFO negligently failed to disclaim liability or otherwise warn participants of the dangers of unauthorized copying, and negligently failed to obtain appropriate guarantees and undertakings from the judges in order to protect the original work presented from any kind of misappropriation.

62.    As a direct and proximate result of Pinkenson's and GPFO's acts and omissions as alleged herein, Plaintiff has suffered monetary damages in the form of lost profits and copyright infringement.

WHEREFORE, Plaintiff, Clayton Prince Tanksley, demands judgment against Sharon Pinkenson and the Greater Philadelphia Film Office, jointly and severally, and requests relief as set forth in detail below.

**FOURTH CLAIM FOR RELIEF**
**INTENTIONAL MISREPRESENTATION**
**Plaintiff vs. Defendant, Lee Daniels**

63.    Plaintiff re-alleges each and every averment set forth in the preceding paragraphs, all of which are incorporated herein by reference.

64.     During the Philly Pitch event, Prince pitched "Cream" and discussed it at length with Daniels, who affirmatively represented to Prince that he was very interested in the property and might well be disposed to proceed further with its development as a television soap opera series.  Daniels also questioned Prince, asking who knew about "Cream", whether Prince had collaborated with anyone in its creation, whether he was working with a lawyer or agent, whether it was registered with The Writers Guild, etc.

65.     In reliance on Daniels' expressions of interest and representations as aforesaid, Prince gave Daniels several copies of the "Cream" DVD and a script, having been led to justifiably believe that Daniels would contact him in the event that Daniels decided to proceed with developing the show.

66.     Daniels' representations as aforesaid were falsely made and Daniels knew they were false when made, yet they were made with the intention of misleading Prince into relying on those misrepresentations.

67.     Prince relied on Daniels' misrepresentations and has sustained injuries in the form of lost profits, lost earnings and other damages as a direct and proximate result of that reliance.

WHEREFORE, Plaintiff, Clayton Prince Tanksley, demands judgment against Defendant, Lee Daniels, and requests relief as set forth in detail below.

## FIFTH CLAIM FOR RELIEF
### NEGLIGENT MISREPRESENTATION
**Plaintiff vs. Defendant, Lee Daniels**

68.     Plaintiff re-alleges each and every averment set forth in the preceding paragraphs, all of which are incorporated herein by reference.

25

69.     Daniels' representations to Prince during their discussion following the Philly Pitch competition as described above, were falsely made under circumstances in which Daniels ought to have known they were false, yet they were made with the intention of inducing Prince to rely on those misrepresentations.

70.     Prince relied on Daniels' misrepresentations and has sustained injuries in the form of lost profits, lost earnings and other damages as a direct and proximate result of that reliance.

WHEREFORE, Plaintiff, Clayton Prince Tanksley, demands judgment against Defendant, Lee Daniels, and request relief as set forth in detail below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Clayton Prince Tanksley, demands judgment against all of the Defendants herein, and respectfully requests the following relief:

## ON THE FIRST CLAIM FOR RELIEF

1.      That the Court find that the Fox Defendants have infringed Prince's copyright in "Cream";

2.      That the Court find that there is a substantial likelihood that the Fox Defendants will continue to infringe Prince's copyright in "Cream" unless enjoined from doing so;

3.      That the Fox Defendants, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined from directly or indirectly infringing Prince's copyright in "Cream" or continuing to market, sell, dispose of, license, lease, transfer, display, advertise, reproduce,

develop, or manufacture any works derived or copied from "Cream" or the Cream Materials or to participate or assist in any such activity;

4.      That the Fox Defendants, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to return to Prince any and all originals, copies, facsimiles, or duplicates of the Cream Materials in their possession, custody, or control;

5.      That the Fox Defendants, their directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with them, be enjoined to recall from all distributors, wholesalers, jobbers, dealers, retailers and all others known to the Fox Defendants, any originals, copies, facsimiles, or duplicates of any works shown by the evidence to infringe any copyright in "Cream";

6.      That the Fox Defendants be enjoined to deliver upon oath, to be impounded during the pendency of this action and destroyed pursuant to judgment herein, all originals, copies, facsimiles, or duplicates of any work shown by the evidence to infringe any copyright in "Cream";

7.      That the Fox Defendants be required to file with the Court and to serve on Plaintiff, with 30 days after service of the Court's order as herein prayed, a report in writing under oath setting forth in detail the manner and form in which the Fox Defendants have complied with the Court's order;

8.      That, at Plaintiff's election, if so made, judgment be entered for Plaintiff and against the Fox Defendants for Plaintiff's actual damages according to proof, and for any lost profits and lost earnings attributable to infringements of Prince's copyright in "Cream";

27

9.      That, at Plaintiff's election, if so made, judgment be entered for Plaintiff and against the Fox Defendants for statutory damages based upon the Fox Defendants' acts of infringement, pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*;

10.     That the Fox Defendants be required to account for all gains, profits, and advantages derived from their acts of infringement and for their other violations of law;

11.     That all gains, profits, and advantages derived by the Fox Defendants from their acts of infringement and other violations of law be deemed to be held in constructive trust for the benefit of Plaintiff;

12.     That Plaintiff be granted judgment against the Fox Defendants for Plaintiff's costs and counsel fees; and

13.     That the Court grant such other and further relief as may be deemed proper under the circumstances.

## ON THE SECOND CLAIM FOR RELIEF

1.      That Defendants, Sharon Pinkenson and the Greater Philadelphia Film Office, have contributorily infringed on Prince's copyright in "Cream".

2.      That Plaintiff be awarded compensatory damages according to proof;

3.      That Plaintiff be awarded statutory damages according to proof;

4.      That Plaintiff be awarded prejudgment interest; and

5.      That the Court grant such other and further relief as may be deemed proper under the circumstances.

## ON THE THIRD CLAIM FOR RELIEF

1.      That Defendants, Sharon Pinkenson and the Greater Philadelphia Film Office, were negligent in failing to properly safeguard Prince's interests;

2.      That Plaintiff be awarded compensatory damages according to proof;

3.      That Plaintiff be awarded prejudgment interest; and

4.      That the Court grant such other and further relief as may be deemed proper under the circumstances.

## <u>ON THE FOURTH CLAIM FOR RELIEF</u>

1.      That   Defendant,   Lee   Daniels,   intentionally   made   material misrepresentations to Prince upon which he justifiably relied to his detriment;

2.      That Plaintiff be awarded compensatory damages according to proof;

3.      That Plaintiff be awarded prejudgment interest;

4.      That Plaintiff be awarded punitive damages;

5.      That Plaintiff be awarded attorney's fees; and

6.      That the Court grant such other and further relief as may be deemed proper under the circumstances.

## <u>ON THE FIFTH CLAIM FOR RELIEF</u>

1.      That Defendant, Lee Daniels, negligently made material misrepresentations to Prince upon which he justifiably relied to his detriment;

2.      That Plaintiff be awarded compensatory damages according to proof;

3.      That Plaintiff be awarded prejudgment interest; and

4.      That the Court grant such other and further relief as may be deemed proper under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY**

**ON ALL ISSUES TRIABLE BY JURY**

Dated: January 8, 2016

BOGAN LAW GROUP, LLC

By: *Mary Elizabeth Bogan*
    Mary Elizabeth Bogan, Esquire
    Attorneys for Plaintiff

    /s/ Predrag Filipovic
    IFight4Justice L/O of
    Predrag Filipovic, Esq.
    Co-Counsel Attorney for Plaintiff

### Verification

I, Clayton Prince Tanksley, an individual and Plaintiff herein, verify that the statements of fact made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.  I understand that false statements in the foregoing Complaint may be subject to the penalties of 18 Pa.C.S.A. § 4904 relating to unsworn falsification to authorities.

Dated: 1/ 8 , 2016

_____
Clayton Prince Tanksley